IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re APPLICATION OF BIOGEN MA, INC. for issuance of a subpoena under 28 U.S.C. § 1782 | No. |

# DECLARATION OF GABRIEL CUONZO

I, Gabriel Cuonzo, declare as follows:

1. I am a founding partner at Trevisan & Cuonzo, a law firm which specialises in IP law and has its main offices in Milan, Italy. I have been practicing law for almost 40 years and have extensive expertise in all fields of intellectual property law. Further details on my experience and qualifications can be found in my attached CV (Appendix 1).

2. I have significant experience in Italian and international patent law, and regularly work in multi-jurisdictional teams with patent law experts from various countries on a regular basis. My work spans across multiple areas of technology, including in the fields of pharma, biochemistry and biotechnology. In addition, I regularly issue affidavits and sworn declarations on a range of IP-related and procedural issues of Italian law for foreign courts.

3. I make this declaration in support of the application (the "Application") by Biogen MA, Inc. (the "Applicant") for an order pursuant to 28 U.S.C. § 1782 granting it leave to serve subpoenas on Sandoz, Inc. ("Respondent") to obtain discovery for use in a patent infringement action to be commenced by the Applicant against the Sandoz, Polpharma, or their affiliates in Italy. I and my firm will serve as counsel in that infringement action.

## The Italian action

4. The Applicant holds a number of patent rights (both granted and still in the application phase) relating to Tysabri®, a biologic medicinal product based on the active principle natalizumab, for the treatment of relapsing-remitting multiple sclerosis, and accompanying methods of evaluating patient risk using an anti-JCV antibody assay.

5. Sandoz and Polpharma announced on September 3, 2019 that they have entered into a global commercialization agreement for a proposed natalizumab biosimilar. They are currently seeking regulatory approval in both the United States and Europe. Based on typical timelines, centralized approval in Europe can be expected in Q3 2023.

6. I understand that patent infringement proceedings based on a number of patents held by the Applicant are already pending in the United States and in the UK.

7. The Applicant intends to bring patent infringement proceedings against Sandoz and/or Polpharma in Italy (it also is likely to bring proceedings against Sandoz and/or Polpharma in other European countries, but this declaration addresses only the Italian proceedings). The basis for bringing proceedings in Italy is that, upon obtaining the centralized marketing authorization they are currently seeking at the European level, Sandoz and Polpharma will be authorized to launch their natalizumab biosimilar on the Italian market, and it is reasonable to assume that they will do so. Further, and in any event, the Applicant is aware that at least a part of the manufacturing process of said biosimilar medicinal product has previously taken place in Italy for clinical trials purposes. It is therefore reasonable to believe that commercial-scale manufacturing will take place in Italy in the future.

8. Reliefs to be requested in the Italian action will include appropriate sanctions directed to preventing further acts of infringement, and the award of damages to compensate for any harm suffered by the plaintiff.

9. The Applicant expects that its Italian action will be based - *inter alia* - on patent application EP 4 187 248 (a divisional of patent EP 3 575 792 due to publish shortly on 31 May 2023), held by the Applicant, claiming natalizumab for use in the treatment of multiple sclerosis in a patient, wherein the treatment comprises a method of evaluating the patient's risk of developing Progressive Multifocal Leukoencephalopathy and, potentially, on EP 3 575 792 itself.

10. Unlike what typically happens in most other jurisdictions, Italian law provides for the possibility of enforcing patent applications that have not yet resulted in granted patents, as long as the alleged infringer is aware of the existence of the application, either because it has been published, or because it has been served on the alleged infringer. Art. 54 IP Code in particular states that:

> "***The protection*** *conferred by the European patent application pursuant to Article 67(1) of the European Patent Convention of October 5, 1973, ratified by Law No. 260 of May 26, 1978,* **shall be effective as of the date on which the holder thereof has made available to the public**, *through the Italian Patent and Trademark Office*, **an Italian translation of the claims** *or has served it directly on the alleged infringer.* […]" (emphasis added).

11. Art. 120.1 IP Code reiterates that an action can be based on an IP right which has not yet granted, specifying that a judgement shall be issued only after the IP right has granted:

    > "[…] *If an action for nullity or an action for infringement is brought* **when the IP right has not yet been granted**, *judgment may be rendered only after the Italian Patent and Trademark Office has made its decision on the application for grant, examining it with priority over applications filed at an earlier date.* […]" (emphasis added).

12. This latter requirement is applicable to judgements in merits proceedings only, whilst in urgent proceedings it is possible for a court to issue an order based on a patent application, as set forth by Art. 132.1 IP Code according to which a preliminary injunction

    > "*can be issued even while grant or registration is pending, provided that the application was rendered accessible to the public or to the persons on which it was served*".

**Timing and structure of the Italian action**

13. The Applicant intends to commence the Italian action immediately after having obtained the results of the discovery ordered pursuant to 28 U.S.C. § 1782.

14. Italian patent proceedings on the merits have a generally frontloaded structure, where the plaintiff must present evidence of the infringement with its initial submissions. Following the initial writ of summons, the defendant submits a structured statement of defence (and possible counterclaim). The parties then file additional written submissions putting forward their evidence and evidentiary requests, before the case is discussed in a substantive hearing. If needed, the court orders an assessment of validity and infringement of the patent in suit to be carried out by an independent advisor

(typically a patent attorney), after which the case is sent to the decision stage. Overall timing to the first instance judgment is around 2-2.5 years, albeit a recently approved reform of procedural rules aims at shortening such timeframe[1].

15. The same frontloaded structure is adopted in preliminary proceedings. These are generally structured around a single written submission (initial motion for PI and defensive brief in response) where the parties must provide all their arguments and evidence, before an independent assessment on validity and infringement of the patent in suit is ordered by the court. A motion for PI can be filed either *ante causam* i.e. before the institution of main proceedings or in the framework of merits proceedings, and it typically takes around 6-8 months for a decision to be issued.

**Italian law on discovery and evidence gathering**

16. Under Italian civil procedure law, there is generally no right to pre-trial discovery comparable to the discovery available in the United States. Instead there are only a limited number of procedural provisions which allow the plaintiff to make an application to obtain certain evidence from another party to the case or from a third party, which the plaintiff would not otherwise be able to obtain.

17. The first option available is requesting an order for search/inspection to be carried out at the premises of the alleged infringer aimed at securing the evidence of the infringement and of its extent (Art. 129-130 IP Code). Search orders are normally granted *ex parte*. If the motion is upheld by the court, the latter would issue an order demanding a Court Bailiff to access the alleged infringers' premises and search for evidence of the infringement (samples, technical sheets, commercial and accounting documentation etc.). The Bailiff would be accompanied by a technical advisor appointed by the court, as well as by the counsel and patent attorneys of the patentee. A validation hearing must subsequently take place for discussing whether the search was duly granted and performed. No discussion of validity and infringement would occur at this stage. If the search order is confirmed, main infringement proceedings would have to be filed within 31 calendar days or 20 working days following validation, whichever accounts for the longer period.

---

[1] A recent bill of reform of the Italian Civil Procedure Code was approved on 10 October 2022 and has just recently entered into force. Among others, this bill of reform has significantly amended the structure of main proceedings. This declaration is rendered by taking into account those amendments.

18. This procedural tool however would not be useful to protect the rights of the Applicant under the circumstances at hand. A request for search must necessarily be directed against a specific entity/entities and must identify the location where the inspection shall be carried out to collect evidence of infringement. The applicant is however currently unaware of the details of the entity/entities involved in the production process of the natalizumab biosimilar that Sandoz/Polpharma are preparing to launch as well as in the step of testing and evaluating the patient's risk of developing Progressive Multifocal Leukoencephalopathy, as claimed by the patent application to be enforced.

19. Another procedural instrument available under Italian law is the possibility to put forward a request for disclosure within the framework of already pending infringement proceedings (Art. 121 IP Code, Art. 210 Civil Procedure Code). The grant of such request is subject to the conditions that the plaintiff 1) must have already provided "serious elements" supporting their claims, and 2) must identify specific documents/information that are in possession of the defendant and of which they seek disclosure.

20. Also in this case, the Applicant could not rely on this option to effectively protect its rights. Firstly, the request for disclosure should be made in the framework of already pending proceedings, whereas as mentioned above the Applicant currently does not have the details of the entity/entities involved in the infringement that are necessary in order to bring the proceedings, and which will name the entity/entities as defendants.

21. Secondly, even if such request was granted by the court, the defendant could not be actually compelled to comply with such request, and the only consequence in case of refusal to provide the documents/information whose disclosure was ordered would be that the court should "take this behaviour into account" when issuing the judgement (Art. 121.4 IP Code and Art. 116.2 Civil Procedure Code).

22. Based on the above, obtaining discovery pursuant to 28 U.S.C. § 1782 for use in a patent infringement action to be commenced against Sandoz, Inc., Polpharma, or their affiliates in Italy is critical to the protection of the patent rights of the Applicant, also considering that the documents/information requested are all relevant to prove infringement of the patent application to be enforced and to identify the entity/entities responsible of such infringement.

23. Based on my experience, Italian courts are receptive to evidence obtained abroad, including through 28 U.S.C. § 1782 proceedings in the United States, and would not deny the possibility for the Applicant to use such evidence in the Italian action. I have indeed personal experience with cases where evidence obtained through 28 U.S.C. § 1782 proceedings were introduced in patent cases pending before Italian courts, including biotech patent cases, a case concerning mechanical patents on road construction machines and a case concerning alleged misappropriation of trade secrets in the production of bone cement (*Heraeus v. Biomet*).

24. My experience also shows that there is no public policy or rule of law in Italy that suggests that evidence under 28 U.S.C. § 1782 should be rejected. Indeed, because Italy is a civil law jurisdiction, the courts are generally indifferent to the source of the evidence the parties provide.

**Rules on confidentiality in Italian proceedings**

25. I understand that it is standard practice for US courts in deciding a motion to allow discovery under 28 U.S.C. § 1782 to consider whether the confidentiality of the documents disclosed can be maintained in foreign proceedings.

26. Briefs and documents filed by the parties, witness testimony, minutes and hearing protocols are not publicly available and can be consulted by the parties of the proceedings only (Art 76 of the Implementing Provisions of the Civil Procedure Code). According to Italian rules of civil procedure, third parties only have access to the judgment and its content, once the latter is published.

27. Further, and importantly, Italian courts routinely grant requests aimed at preserving the confidentiality of highly sensitive commercial or technical information that the parties or the court might need to refer to in the course of the case.

28. Having implemented into the IP Code the Directive (EU) 2016/943 of the European Parliament and of the Council of 8 June 2016 on the protection of undisclosed know-how and business information (trade secrets) against their unlawful acquisition, use and disclosure (so-called "Trade secrets Directive"), Italy offers a strong level of protection that is on par with other European jurisdictions.

29. Along with a general provision requiring judges to take all appropriate measures and steps for the protection of confidential information, the Italian IP Code specifically contemplates (at Art. 121 *ter*) the power for the judge to:

   i.   issue protective orders, namely orders by which all persons who have access to the confidential information because of the duties that they perform in the case (including court auxiliaries) are expressly prohibited from disclosing or using such information for purposes other than their respective duties in the case;

   ii.  restrict access to the hearings, briefs and documents present on file to certain persons only (e.g. defense counsels only), thus setting up so-called "confidentiality clubs";

   iii. order that judgments or decisions issued in the case be redacted in those parts that contain or refer to confidential information of the parties.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is, to my best knowledge, true and correct.

Executed on May 10, 2023 in Milan, Italy.

Gabriel Cuonzo



3443936_1