**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| | C.A. No. 23-mc-260-GBW |
| In re APPLICATION OF BIOGEN MA, INC. for issuance of a subpoena under 28 U.S.C. § 1782 | REDACTED - Public Version Filed July 21, 2023 |

**SANDOZ INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION TO VACATE ORDER REGARDING BIOGEN'S APPLICATION AND DISMISS THIS ACTION, TO QUASH THE SUBPOENA, OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER TO MODIFY THE SUBPOENA**

Of Counsel:

Erik J. Olson
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, CA  94304
(650) 813-5600
EJOlson@mofo.com

Eric P. Berger
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
EBerger@mofo.com

Aaron G. Fountain
MORRISON & FOERSTER LLP
701 Brazos Street, Suite 1100
Austin, TX  78701
(737) 309-0700
AFountain@mofo.com

Dated:  July 20, 2023

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Respondent Sandoz Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION .................................................................................................... 1

NATURE AND STAGE OF THE PROCEEDINGS| ................................................ 2

SUMMARY OF THE ARGUMENT ......................................................................... 3

STATEMENT OF FACTS ........................................................................................ 4

I.      The Patent Claims Stand Rejected and the Product Has Not Been Approved ................... 4

II.     The Subpoena Is Overly Broad and Burdensome ............................................................. 6

ARGUMENT ............................................................................................................ 7

I.      The Court Should Vacate the Order ................................................................................ 7

        A.      Legal Standards ................................................................................................ 7

        B.      Biogen's Application Fails to Satisfy Statutory Requirements ............................ 8

                1.      Biogen Seeks Information That Is Not "For Use" in a Foreign
                        Proceeding Within Reasonable Contemplation ......................................... 8

                2.      Sandoz Int'l GmbH and Sandoz GmbH, the True Targets of the
                        Application, neither "Reside" nor "are Found" in Delaware.................... 10

        C.      The *Intel* Factors Favor Vacating the Order ...................................................... 13

                1.      Italian Courts have Jurisdiction Over the Requested Discovery .............. 13

                2.      An Italian Court Would Not Use the Evidence Biogen Is
                        Requesting.............................................................................................. 15

                3.      Biogen Seeks to Circumvent Italian Proof-Gathering Restrictions .......... 15

                4.      Biogen's Requests are Overly Broad and Unduly Burdensome .............. 18

        D.      The "Twin Aims" of § 1782 Favor Vacatur of the Application .......................... 18

II.     The Subpoena Should be Quashed Under Rules 26 and 45............................................. 19

III.    At a Minimum, The Subpoena Should be Modified and a Protective Order
        Entered ......................................................................................................................... 20

        A.      Reasonable Restrictions Should be Implemented................................................. 20

CONCLUSION....................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Application of Gilead Pharmasset LLC*,
  C.A. No. 14-mc-243 (GMS), 2015 WL 1903957 (D. Del. Apr. 14, 2015) ......................16, 17

*In re Application of Qualcomm Inc.*,
  162 F. Supp. 3d 1029 (N.D. Cal. 2016) ................................................................................18

*BANOKA S.à.r.l. v. Alvarez & Marsal, Inc.*,
  No. 22-MC-00182 (GHW)(KHP), 2023 WL 1433681 (S.D.N.Y. Feb. 1, 2023) .....................9

*In re Chevron Corp.*,
  633 F.3d 153 (3d Cir. 2011)...................................................................................................15

*Donald M. Durkin Contracting, Inc. v. City of Newark*,
  No. CVIA 04-163 GMS, 2006 WL 2724882 (D. Del. Sept. 22, 2006) ...................................1

*In re Fuhr*,
  No. 13 Civ. 6753, 2014 WL 11460502 (S.D.N.Y. Aug. 6, 2014) .........................................11

*In re Glob. Energy Horizons Corp.*,
  647 F. App'x 83 (3d Cir. 2016) .......................................................................................13, 19

*IJK Palm LLC v. Anholt Servs. USA, Inc.*,
  33 F.4th 669 (2d Cir. 2022) ....................................................................................................9

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004)........................................................................................................ *passim*

*Inv. Vehicles v. KPMG, L.L.P.*,
  798 F.3d 113 (2d Cir. 2015)....................................................................................................9

*Kestrel Coal Pty. Ltd. v. Joy Glob., Inc.*,
  362 F.3d 401 (7th Cir. 2004) .................................................................................................11

*Kulzer v. Esschem, Inc.*,
  390 F. App'x 88 (3d Cir. 2010) ............................................................................................16

*In re Letter of Request from SPS Corp 1*,
  C.A. No. 21-mc-565-CFC, 2022 WL 3908067 (D. Del. Aug. 30, 2022) ..............................15

*In re Microsoft Corp.*,
  428 F. Supp. 2d 188 (S.D.N.Y. 2006).....................................................................................14

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*In re OOO Promnefstroy*,
  No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ...................................13, 14

*Pinchuk v. Chemstar Products LLC*
  No. 13-MC-306-RGA, 2014 WL 2990416 (D. Del. June 26, 2014) ...............................18, 19

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
  233 F.R.D. 143 (D. Del. 2005) .........................................................................................11

*Sandoz Inc. v. Amgen Inc.*,
  582 U.S. 1 (2017).................................................................................................................12

*In re Sargeant*,
  278 F.Supp. 3d 814 (S.D.N.Y. 2017).................................................................................9

*In re Syngenta Crop Prot. AG*,
  No. 21-mc-375-CFC, 2022 WL 3153858 (D. Del. Aug. 8, 2022)....................................17, 18

*Via Vadis Controlling GmbH v. Skype, Inc.*,
  C.A. No. 12-MC-193-RGA, 2013 WL 646236 (D. Del. Feb. 21, 2013)..........................16, 17

*In re Wei*,
  No. 18-mc-117-RGA, 2018 WL 5268125 (D. Del. Oct. 23, 2018) ..................................9

*In re Yilport Holding A.S.*,
  No. CV 22-3028-ES-AME, 2023 WL 2140111 (D.N.J. Feb. 21, 2023) ...........................7, 8

**Statutes**

28 U.S.C. § 1782............................................................................................................. *passim*

42 U.S.C. § 262..............................................................................................................2, 12, 13

**Other Authorities**

Fed. R. Civ. P. 26..........................................................................................................2, 4, 7, 19

Fed. R. Civ. P. 45.............................................................................................................2, 4, 19

Sandoz Inc. hereby submits its opening brief in support of its motion (the "Motion") to vacate and dismiss, to quash, or, alternatively to issue a protective order to modify, Applicant Biogen MA, Inc.'s ("Biogen") subpoena.[1]

## INTRODUCTION

The Court's order granting Biogen's *ex parte* application for discovery from Sandoz under 28 U.S.C. § 1782 (the "Application") should be vacated.  Biogen's Application fails to meet the requirements of § 1782 and "the *Intel* factors" favor discretionary vacatur.  Biogen's intended action is entirely speculative.  The Application suggests that Biogen will bring a case in Italy on a European patent application where every claim has been rejected.  Moreover, Biogen's Italian law expert admits that Biogen does not know whether the claims of the patent application will be practiced in Italy, and if so, who will practice them.  (D.I. 5 ("Cuonzo Dec.") ¶ 18.)

Section 1782 gives federal courts discretion to order discovery from a person or entity who resides in or is found in the district when an interested person seeks that discovery for use in foreign proceedings.  28 U.S.C. § 1782.  Biogen's Application, nominally against Sandoz Inc., seeks discovery from Sandoz GmbH and Sandoz Int'l GmbH (or others), attempting to uncover any factual information to support a future claim against them or Polpharma SA Pharmaceutical Works ("Polpharma") in Italy.  This Application—to determine whether Biogen has an infringement claim in Italy based on a rejected patent application—does not seek information "for use in" a potential proceeding within reasonable contemplation.

Biogen's Application should also be vacated under the *Intel* factors for related reasons.

---

[1] Sandoz Inc.'s motion is additionally justified as a motion for reargument or reconsideration, given the fact that Sandoz Inc. did not have an opportunity to present the law and facts on the Application prior to its grant.  *See, e.g., Donald M. Durkin Contracting, Inc. v. City of Newark*, No. CVIA 04-163 GMS, 2006 WL 2724882, at *7 (D. Del. Sept. 22, 2006) (reconsidering an order when the court had the opportunity to review not initially available evidence).

Biogen uses § 1782 to circumvent Italian law, and while Biogen has agreed to narrow some aspects of its requested Subpoena, it still seeks burdensome and irrelevant discovery of information that is potentially within the jurisdiction of the Italian courts.  Biogen's Application appears to be a fishing expedition to manufacture foreign litigation, and the Court should not permit it.  Such discovery does not satisfy the *Intel* factors or Fed. R. Civ. P. 26 and 45.

Biogen possesses Sandoz Inc.'s Biologics License Application ("BLA") for a natalizumab biosimilar pursuant to the Biologics Price Competition and Innovation Act ("BPCIA").  42 U.SC. § 262; D.I. 2 at 2.  As part of the BPCIA's careful balance of the interests of reference product sponsors, like Biogen, and biosimilar applicants, like Sandoz Inc., Congress limited BLA use "for the *sole and exclusive* purpose of determining . . . whether a claim of patent infringement could reasonably be asserted if [Sandoz Inc.] engaged in the manufacture, use offering for sale, sale, or importation into the *United States* of the biological product that is the subject of [Sandoz Inc.'s BLA]."  42 U.S.C. § 262(*l*)(D) (emphases added).

Based on receipt of Sandoz Inc.'s BLA, Biogen separately sued Sandoz Inc., Polpharma, Sandoz Int'l GmbH, and Sandoz GmbH before this Court in C.A. No. 22-1190-GBW.  This is a proper, congressionally granted use of the BLA.  But Biogen cannot use § 1782 to circumvent the BPCIA's specific and carefully-crafted limits.  Biogen is not entitled to use Sandoz Inc.'s BLA (as well as additional broad and irrelevant discovery) in search of new evidence from Sandoz GmbH and Sandoz Int'l GmbH.  The order Biogen seeks would gut the protections of the BPCIA and encourage future reference product sponsors to repeat the same action in Delaware. Biogen's Application should be rejected for this reason alone, as well as for failure to satisfy the statutory provisions of § 1782, its twin aims, and the *Intel* factors.

## NATURE AND STAGE OF THE PROCEEDINGS|

On May 15, 2023, Biogen filed the Application against Sandoz Inc., seeking discovery in

support of a hypothetical Italian action.  Biogen had previously brought a complaint against Sandoz Inc., Sandoz Int'l GmbH, Sandoz GmbH, and Polpharma in this Court on September 9, 2022.  Sandoz Int'l GmbH and Sandoz GmbH were dismissed without prejudice by agreement. D.I. 11 in C.A. No. 22-1190-GBW.  Biogen, various Sandoz entities, and Polpharma are also engaged in an ongoing matter in the United Kingdom.  (D.I. 3 at 10.)  But no judicial proceedings—or any activity whatsoever—exists in Italy today.

Biogen's *ex parte* Application to this Court was granted on May 22, 2023 (the "Order"). (D.I. 8.)  Biogen then served on Sandoz Inc. a Document Subpoena (the "Subpoena").  (Non-served version filed at D.I. 2.)  Any challenges to the Order and/or the Subpoena are due on July 20, 2023.  (D.I. 12.)  Biogen agreed to modify the scope of its Subpoena on July 18, 2023. (Section 7.1.1 statement filed contemporaneously.)  Sandoz Inc.'s deadline to serve objections and/or responses to the Subpoena is deferred by the filing of this Motion.  (*Id.*)

## SUMMARY OF THE ARGUMENT

The Order should be vacated because the Application does not meet two of § 1782's statutory requirements, nor the twin aims of § 1782.  The true targets of the Application are not Sandoz Inc., but Sandoz GmbH, an Austrian corporation, and Sandoz Int'l GmbH, a German corporation.  Neither of these companies "reside in" or are found in this District—as required by § 1782.  Moreover, the information sought in Biogen's Application is not "for use" in a foreign proceeding within reasonable contemplation.  Biogen does not identify (1) an alleged infringer, (2) the claims of the patent or pending application (with all claims currently rejected) it plans to assert, or (3) any evidence of infringement to support its § 1782 application.  Biogen's unsupported, conclusory statements cannot support a finding that its theoretical action based on an ungranted patent application with an indefinite scope against an unknown "infringer" is within "reasonable contemplation" under the "for use" prong of § 1782.

3

The Order should also be vacated because all of the discretionary *Intel* factors weigh in favor of denial.  First, Biogen admits that Sandoz GmbH and Sandoz Int'l GmbH may be parties to an "Italian Action" (*see* D.I. 3 at 11), where they would be subject to the jurisdiction of that court.  Second, Italian courts would not use the irrelevant information that Biogen seeks—such as all performances of the test that have taken place in the last three years or will ever take place—when determining infringement of an ungranted patent application.  Third, Biogen's Application circumvents Italian proof-gathering restrictions without attempting to use Italian discovery procedures.  Fourth, the discovery requests are overbroad and unduly burdensome.

The Court should also quash the Subpoena under Rules 26 and 45 because it poses an undue burden on Sandoz by asking for information held by other entities, potentially subject to privacy protections, undisclosed in other litigation, and entirely irrelevant to the alleged potential infringement claims.  Furthermore, Biogen fails to make any showing about the need for this information, proportionality as required by law, or relevance to a potential Italian Action.

If not quashed, the Subpoena at least should be modified, and the Court should enter a protective order.

## STATEMENT OF FACTS

### I.      The Patent Claims Stand Rejected and the Product Has Not Been Approved

The Application seeks discovery for an intended action against Polpharma, Sandoz GmbH, and/or Sandoz Int'l GmbH in Italy asserting infringement based on (1) pending application EP 22 209 669 (the "Pending Application") and (2) "potentially" EP 3 575 792 B1 ("EP 792"), the Pending Application's parent.  (D.I. 3 at 11.)  But the Pending Application's claims have currently all been rejected by the European Patent Office as facially impermissible "purpose limited product" claims.  Moreover, the only people who could practice the purpose limited product claims of EP 792 are doctors, not the company defendants that Biogen identifies.

The Pending Application published on May 31, 2023 as publication number EP 4 187

248 A1.  (Declaration of Aaron G. Fountain ("Fountain Dec."), Ex. 1.)  The application has two

independent claims and ten dependent claims.  Representative independent claim one reads:

> 1. Natalizumab for use in the treatment of multiple sclerosis [MS] in a
> patient, wherein the treatment comprises a method of evaluating the
> patient's risk of developing Progressive Multifocal Leukoencephalopathy
> (PML), the method comprising:
>
>> i) determining, in a serum or plasma sample of the patient, an anti-
>> JC Virus (JCV) antibody titer, wherein the anti-JCV antibody titer
>> is determined by an ELISA assay comprising the following steps:
>>
>>> (a) forming a reaction mixture comprising an aliquot of
>>> sample and a substrate on which is disposed Highly
>>> Purified Viral-Like Particles (HPVLPs), and
>>>
>>> (b) detecting the level of anti-JCV antibody bound to said
>>> substrate on which is disposed HPVLPs;
>>>
>>> wherein the anti-JCV antibody titer is expressed as an
>>> index value, wherein the index value is determined by
>>> normalizing an optical density (OD) value of the sample to
>>> a cut-off calibrator adjusted to have an nOD of 1, and a
>>> positive control is adjusted to have an nOD of 1.3; wherein
>>> the cut-off calibrator and positive control comprise a
>>> mixture of serum positive for anti-JCV antibodies and
>>> serum negative for anti-JCV antibodies, and wherein a
>>> negative control comprises anti-JCV antibody negative
>>> serum and has an nOD of 0.1; and
>>
>> ii) determining the patient to be at high risk of developing PML if
>> the anti-JCV antibody index value is determined to be > 1.5.

(D.I. 4 ("Butler Dec."), Ex. 4 at 1.)  The European Examiner characterized these claims as

"purpose limited product claims," and rejected them all as lacking novelty and clarity.  (Fountain

Dec., Ex. 3 at 3, 3.1.)  The European Examiner explained that the method:

> is neither associated to the compound [natalizumab] nor with the therapeutic
> method [treatment of MS].  In this context, it is stressed that the claim
> category is a medical use claim (therapy).  Thus, the *in vitro* diagnosis steps
> are not actually part of the method, since they do not constitute therapy,

> irrespective of how the applicant defines 'treatment.'   Therapy is the administration of a therapeutic compound-not in vitro diagnosis.   The diagnostic steps merely provide the selection range of patients.

In other words, the European Examiner rejected the claims because they failed to connect the recited diagnostic method with the use of natalizumab as "therapy," and because treating MS patients with natalizumab was well known.  (*Id.* at 3.3, 3.4.)

The granted claims of EP 792 consist of one independent claim and eight dependent claims.  (Butler Dec. at Ex. 3 at 33, 34.)  The claims all recite "[a] method of evaluating a patient's risk of developing Progressive Multifocal Leukoencephalopathy (PML), the method comprising . . . ."  (*Id*.)  The claims are thus method claims that would be infringed, if at all, by practitioners who "evaluat[e] a patient's risk of developing [PML]."  None of the entities that Biogen identifies as defendants evaluate patients' risk and thus, they cannot infringe the claims of EP 792.  Biogen makes no allegations of any individuals performing such steps, nor any evidence that Polpharma, Sandoz GmbH, or Sandoz Int'l GmbH would perform such steps. Without naming an entity that would infringe, Biogen cannot seek relief from an Italian court. (Galimberti Dec. ¶10.)

Biogen admits that it does not know which parties would infringe the claims of the Pending Application or EP 792.  (Cuonzo Dec. ¶ 18.)  Instead, Biogen hopes to determine who might infringe its yet ungranted claims, searching for defendants in the hypothetical Italian Action.  (D.I. 3 at 11; D.I. 2 at Reqs. 2-4.)  But beyond that, Biogen fails to identify any specific act of infringement that the entities Biogen identifies would purportedly carry out and that would support Biogen's theorized request for relief from an Italian court.  (Galimberti Dec. ¶ 12.)  In short, the Application appears to be a fishing expedition, not in furtherance of a foreign action.

## II.   The Subpoena Is Overly Broad and Burdensome

Biogen's Application seeks "where and how Sandoz and Polpharma have performed or

will perform their assay *in Europe*."  (D.I. 3 at 17.)  Biogen does not explain how this pan-European information would be relevant to an Italian infringement action.  Biogen has agreed to limit its Requests to actions pertaining to patient samples taken in Italy.  But Biogen's Requests still include "[d]ocuments sufficient to identify every laboratory or provider that has performed the Sandoz/Polpharma Assay" of those samples "and to show when and where the Sandoz/Polpharma Assay" was, is, or will be performed for those samples.  (D.I. 2 at 2.)  Biogen has not provided any argument or theory that such samples exist—nor that any actions of laboratories outside of Italy would be relevant to an infringement case therein.

Biogen simply declares that because the documents are "relevan[t,]" the needs of Fed. R. Civ. P. 26(b)(1) are met.  (D.I. 3 at 17.)  But beyond failing to demonstrate relevance, Biogen ignores the remaining requirements of Rule 26(b)(1): Biogen must instead demonstrate that the documents are "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Biogen's failure to address these requirements should alone be disqualifying.  In addition, any document production regarding patient samples also likely implicates privacy laws, such that production would present both undue burden and substantial risk to Sandoz.

## **ARGUMENT**

### I.   **The Court Should Vacate the Order**

#### A.   **Legal Standards**

"An order authorizing discovery under Section 1782 may be issued on an *ex parte* application, without prejudice to the subpoenaed party's right to file a motion to vacate the order and/or quash the subpoena."  *In re Yilport Holding A.S.*, No. CV 22-3028-ES-AME, 2023 WL

2140111, at *3 (D.N.J. Feb. 21, 2023).  Section 1782 "authorizes, but does not require," that

courts provide judicial assistance for use in foreign proceedings.  *See Intel*, 542 U.S. at 255.  The

applicant must prove three factors: (1) that the person from whom discovery is sought resides or

is found in the district, (2) that the discovery is for use in a proceeding before a foreign or

international tribunal, and (3) that the applicant is an interested person in that proceeding.  *See* 28

U.S.C. § 1782.  Further, the Supreme Court has identified four discretionary factors for judicial

assistance: (1) whether "the person from whom discovery is sought is a participant in the foreign

proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway

abroad, and the receptivity of the foreign government or the court or agency abroad to U.S.

federal-court judicial assistance;" (3) whether the request "conceals an attempt to circumvent

foreign proof-gathering restrictions or other policies of a foreign country or the United States;"

and (4) whether the request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264–65.

### B.      Biogen's Application Fails to Satisfy Statutory Requirements

The Court should vacate its prior Order granting § 1782 discovery because the

Application fails to meet two statutory requirements.  First, Biogen's Application seeks

discovery that is not "for use" in any action within reasonable contemplation.  Second, the

Application seeks documents potentially possessed in the normal course of business by Sandoz

GmbH (an Austrian company) and Sandoz Int'l GmbH (a German company)—neither of whom

"reside in" the United States—and/or other Sandoz entities outside of the United States.

#### 1.      Biogen Seeks Information That Is Not "For Use" in a Foreign Proceeding Within Reasonable Contemplation

The Court should vacate its prior Order because Biogen's Application does not seek

discovery "for use" in a foreign judicial proceeding "within reasonable contemplation."  *Intel*,

542 U.S. at 259 (specifying "within reasonable contemplation" requirement).  Courts have held

that under *Intel*, an applicant must provide "reliable indications of the likelihood that proceedings will be instituted within a reasonable time" for a proceeding to be within "reasonable contemplation." *E.g., In re Wei*, No. 18-mc-117-RGA, 2018 WL 5268125, at *2–3 (D. Del. Oct. 23, 2018). "Speculative" proceedings do not satisfy the "for use" requirement; "[an applicant] must provide some objective indicium that the action is being contemplated." *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.,* 798 F.3d 113, 123 (2d Cir. 2015). An applicant must present "concrete basis" of a proceeding. *Id.* at 124. "Merely retaining counsel and sketching a vague outline of a proposed suit does not meet that requirement." *IJK Palm LLC v. Anholt Servs. USA, Inc.*, 33 F.4th 669, 681 (2d Cir. 2022). The Application is entirely speculative because it does not identify the key portions of any infringement proceeding: a defendant; patent claims it plans to assert; or any grounds to proceed on any one of the claims.

Biogen seeks documents without limits and without a sufficient factual basis. Its requests extend three years in the past and potentially to laboratories around the world despite claiming future infringement of a yet-to-be issued patent in Italy. And Biogen fails even to state which rejected claims of the Pending Application it plans to assert against which of its nebulous potential defendants. Biogen's efforts to discover infringers—as well as any evidence of infringement—are not "for use" in a foreign proceeding. *In re Sargeant*, 278 F.Supp. 3d 814, 823 (S.D.N.Y. 2017) (contemplated proceeding is insufficient where the petitioner "plans to use the evidence he seeks to assess whether to initiate actions"); *BANOKA S.à.r.l. v. Alvarez & Marsal, Inc.*, No. 22-MC-00182 (GHW)(KHP), 2023 WL 1433681, at *6 (S.D.N.Y. Feb. 1, 2023) ("for use" requirement not met where "broad demands reveal the discovery sought is more in the nature of a fishing expedition than the hope that it will turn up sufficient factual information to support a colorable claim of fraud.").

Moreover, the Application fails on its face to meet the "for use" requirement as to the granted EP 792 patent because Biogen itself does not even claim it will assert this patent. Rather, Biogen identifies that patent as "potentially" being asserted.  Nor does Biogen identify any infringer.  The EP 792 patent claims "a method of evaluating a patient's risk of developing Progressive Multifocal Leukoencephalopathy[,]" which is a method performed by doctors.  (D.I. 3 at 5.)  But Biogen points to no physicians who would be performing the method.  Biogen merely says that Polpharma, Sandoz Int'l GmbH, and/or Sandoz GmbH *may* be defendants in the Italian Action—because Biogen has no evidence as to what actions are taking place, where, and by whom.  (Cuonzo Dec. ¶ 18.)  Biogen's failure to identify an alleged infringer, its intended defendant, or a legal theory for "potentially" asserting this patent underscores that discovery related to EP 792 patent is not "for use" in a legal proceeding withing reasonable contemplation.

The Italian Action is additionally not reasonably contemplated because there is no "imminent infringement" in Italy based on the natalizumab biosimilar, as required for a preliminary injunction.  (Galimberti Dec. ¶ 7.)  To evaluate whether "imminent infringement" exists for a drug not yet on the market in Italy, the Italian courts would consider multiple independent indicia such as i) a grant of approval by the EMA, ii) the imminent approval of the drug's price and reimbursement by the Italian Medicines Agency ("AIFA"), iii) the drug's launch in different countries, and iv) public statements by the manufacturer about when the drug will launch.  (*Id.*)  None of these have occurred here, and Biogen points to no objective indicia of imminence—instead relying on mere speculation about when the natalizumab biosimilar could potentially be approved.  A lawsuit, therefore, is not within reasonable contemplation.

### 2. Sandoz Int'l GmbH and Sandoz GmbH, the True Targets of the Application, neither "Reside" nor "are Found" in Delaware.

The Court should vacate its prior Order because Biogen's Application targets documents

controlled in the regular course of business by Sandoz Int'l GmbH, Sandoz GmbH, and/or potentially other foreign Sandoz entities, which may possess documents unknown to Sandoz Inc. Sandoz GmbH and Sandoz Int'l GmbH—Austrian and German companies, respectively—neither reside in nor are found in Delaware. ███████████████████████

███████████████████████████████

███████████████████████████████

██████████████████████████████████

████████████████████████████

Sandoz Inc. has produced relevant documents possessed by Sandoz GmbH and Sandoz Int'l GmbH in C.A. No. 22-1190-GBW before this Court, Sandoz GmbH and Sandoz Int'l GmbH as independent legal entities agreed to produce documents in that case.  (*Id.*; Fountain Dec. Ex. 4.)

Section 1782 does not permit a petitioner to seek documents from foreign affiliates through domestic corporations.  Courts have thus looked at the actual target of the discovery request in determining whether the target is "found" in the state.  *E.g.*, *In re Fuhr*, No. 13 Civ. 6753, 2014 WL 11460502, at *2 (S.D.N.Y. Aug. 6, 2014) (holding that a § 1782 petition naming a domestic entity was properly denied because the petitioner actually sought information from the foreign entity), *aff'd sub nom. Fuhr v. Deutsche Bank*, *A.G.*, 615 F. App'x 699, 700 (2d Cir. 2015); *Kestrel Coal Pty. Ltd. v. Joy Glob., Inc.*, 362 F.3d 401, 405 (7th Cir. 2004).

Sandoz Inc. is a separate corporate entity from Sandoz Int'l GmbH and Sandoz GmbH. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 145 (D. Del. 2005) (holding separate and distinct corporate identities should not be disregarded in discovery except in rare circumstances that would justify piercing the corporate veil).  Sandoz Inc. is a U.S. corporation, and thus is responsible for drug commercialization and regulatory submissions in

11

the U.S.  (Declaration of Paul Delo ("Delo Dec.") ¶¶ 4-7.)  Sandoz Int'l GmbH and Sandoz

GmbH, on the other hand, are European companies communicating with European agencies.

The Application seeks international entities' documents that, in the regular course of business,

are presumably maintained outside the U.S., to pursue claims outside the U.S.  For instance,

Biogen requests specific communications with the European Medicine Agency, which are

properly the responsibility of companies in Europe.  (*See* D.I. 2 at Reqs. 5–6.)

  Beyond issues of irrelevance, overbreadth, and undue burden, Requests 1(a)–(g) are

directed to the development and use of assay technologies.  (*See* D.I. 3-1, Ex. A at 7–9.)  Biogen

requests technical information ████████████████████████████████████

████████████████████████████████████████ █ ████████████████ But

Congress expressly restricts Biogen's use of Sandoz Inc.'s BLA under the BPCIA to "the sole

and exclusive purpose of determining" whether Sandoz Inc. will infringe any Biogen's patents in

the United States. 42 U.S.C. § 262(l)(D).  When Congress "expressly provides a remedy, courts

must be especially reluctant to provide additional remedies."  *Sandoz Inc. v. Amgen Inc*., 582

U.S. 1, 16 (2017) (quoting *Karahalios v. Federal Employees*, 489 U.S. 527, 533 (1989)).  This

Court should not permit BPCIA plaintiffs to circumvent the limits imposed by "[t]he BPCIA's

'carefully crafted and detailed enforcement scheme' . . . ."  *Id*. (quoting *Great–West Life &*

*Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002)).  Congress expressly provided that an

infringement action in the United States is the exclusive remedy provided by the BPCIA, *id.*, and

that the material submitted with a BLA would remain confidential even after an infringement

action commenced.  42 U.S.C. § 262(l)(F).  Requiring Sandoz Inc. to disclose portions of its

---

[2] ████████████████████████████████████████████████████████
████████████████████████████████████████

BLA to Biogen for the filing of foreign lawsuits conflicts with the confidentiality provisions that Congress enacted.  Similarly, forcing Sandoz Inc. to produce confidential documents it has received from Sandoz GmbH and Sandoz Int'l GmbH for the purpose of litigation related to the BLA both would vitiate the protections provided by that case's protective order and confirms that these documents are more properly sought from Sandoz GmbH and Sandoz Int'l GmbH.

### C.  The *Intel* Factors Favor Vacating the Order

The Order should also be vacated as a matter of discretion under all four factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  *First*, Italian courts have jurisdiction over Sandoz Int'l GmbH and Sandoz GmbH, as well as the documents in their possession, to the extent they would be proper defendants in those courts.  *Second*, Italian courts would not use the irrelevant information that Biogen seeks when determining infringement of the Pending Application.  *Third*, Biogen is attempting to circumvent Italian proof-gathering restrictions.  *Fourth*, the discovery requests are overbroad and unduly burdensome.

### 1.  Italian Courts have Jurisdiction Over the Requested Discovery

The first *Intel* factor concerns "whether the discovery sought is within the foreign tribunal's jurisdictional reach, and therefore accessible without aid under § 1782."  *In re Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85 (3d Cir. 2016).  When "nearly all of the documents that the subpoena seeks are also in the possession of parties to the foreign proceeding, the first factor [is] squarely in favor of [the respondent]."  *In re OOO Promnefstroy*, No. M 19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009).

Biogen does not identify any document needed for a potential Italian Action against Sandoz Int'l GmbH, Sandoz GmbH, or Polpharma—or any potential defendant—that is solely in Sandoz Inc.'s possession and outside the jurisdiction of the Italian courts.  Thus, Biogen does not need § 1782 discovery.  *See In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006),

*abrogated on other grounds by In re del Valle Ruiz*, 939 F.3d 520 (2d Cir. 2019).  Rather, Biogen hopes to use § 1782 to get European documents from European companies relating to Italian conduct.  These are accessible without § 1782.

Moreover, Biogen does not assert any difficulty in obtaining discovery in Italian proceedings.  In fact, Biogen's expert on Italian procedure references several procedural methods for obtaining discovery in Italy.  (Cuonzo Dec. at ¶¶16-19.)  Even assuming that Mr. Cuonzo is correct and the discovery mechanisms in Italy are limited—which Sandoz disputes—limitations on discovery do not support a § 1782 application.  When "the evidence is available to the foreign tribunal," assistance under § 1782 "is both unnecessary and improper."  *In re Microsoft Corp.*, 428 F. Supp. 2d at 194; *see also Promnefstroy*, 2009 WL 3335608, at *5 ("[I]t is the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application, on which the district court should focus.").  While the Second Circuit has held that there is no "categorical bar" from allowing discovery of documents located abroad, the court stated that "a [district] court may properly, and in fact should, consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery."  *Del Valle Ruiz*, 939 F.3d at 533.

Biogen claims to plan on bringing an action against Sandoz Int'l GmbH, Sandoz GmbH, and Polpharma in the Italian courts.  (D.I. 3 at 11.)  If jurisdiction over any of these entities in an Italian action is proper, the Italian courts would also have jurisdictional reach over documents and evidence in their possession, at least regarding activities which allegedly would give rise to such an action.  (Galimberti Dec. ¶ 11.); *Intel*, 542 U.S. at 264 ("A foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence."); *see also In re Letter of Request from SPS Corp 1*, C.A. No. 21-mc-565-CFC, 2022 WL 3908067, at

*3 (D. Del. Aug. 30, 2022), *reconsideration denied*, 2022 WL 16739786 (D. Del. Nov. 7, 2022).

The first *Intel* factor weighs against the Application.

### 2.    An Italian Court Would Not Use the Evidence Biogen Is Requesting

The second *Intel* factor considers whether the "[foreign] court would consider evidence revealed in a § 1782 proceeding."  *In re Chevron Corp.*, 633 F.3d 153, 163 (3d Cir. 2011). Although Biogen argues that Italian courts would accept information collected under § 1782, (D.I. 3 at 15–16), an Italian court will not consider irrelevant evidence.  (Galimberti Dec. ¶ 13.)

Biogen offers little explanation of how it plans to use the discovery it seeks in an Italian Action against Sandoz Int'l GmbH, Sandoz GmbH, and Polpharma or indeed, how any of the categories are relevant to a potential infringement action.  Numerous requests in the Subpoena have no bearing on whether Sandoz Int'l GmbH and Sandoz GmbH—or any other potential defendant—infringe the pending application in Italy.  (Galimberti Dec. ¶ 13.)  Biogen makes no assertion about what is required to maintain an infringement action in Italy, nor even whether divided, contributory, or induced infringement is possible there.  For instance, Requests 2–4 seek information about laboratories that may perform the ImmunoWELL assay—in other words, third parties.  But again, Biogen neither claims infringement by third parties nor states that such parties are potential defendants in an Italian action from whom discovery cannot be obtained.

The second *Intel* factor favors vacating the Order.

### 3.    Biogen Seeks to Circumvent Italian Proof-Gathering Restrictions

The third *Intel* factor cautions against granting § 1782 applications that "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 264–65.  That is precisely what Biogen attempts here.

In assessing this factor, a court "must consider whether the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules."  *Kulzer v. Esschem, Inc.*, 390 F.

App'x 88, 92 (3d Cir. 2010).  A petitioner who eschews foreign discovery altogether and immediately files a § 1782 application shows "a lack of interest in pursuing any discovery" in the applicable jurisdictions, which "indicates an attempt to circumvent those rules."  *In re Application of Gilead Pharmasset LLC*, C.A. No. 14-mc-243 (GMS), 2015 WL 1903957, at *5 (D. Del. Apr. 14, 2015); *see also Via Vadis Controlling GmbH v. Skype, Inc.*, C.A. No. 12-MC-193-RGA, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013) (reasoning that where the foreign court has the authority to order the requested relevant discovery, "§ 1782 would be, in essence, a circumvention of the foreign courts' rules and enforcement procedures").

Here, the foreign discovery mechanisms that Biogen would avoid are telling.  In Italy, a party can obtain documents from an opposing party, provided the requesting party identifies the location or identity of the party against whom discovery is sought.  (Cuonzo Dec. ¶ 18; Galimberti Dec. ¶¶ 9–10.)  For example, a plaintiff can request, *ex parte*, permission from the court to inspect the premises of an alleged infringer and make copies of relevant documents.  (Cuonzo Dec. ¶ 17; Galimberti Dec. ¶¶ 11–12.)  If a plaintiff can bring *any* reasonable allegation against a party, then an Italian court would grant said plaintiff access to the accused infringer's premises to search for evidence of infringement.  (*Id.*)

Biogen gives no reason that discovery cannot be obtained from Italian courts.  To Biogen's own admission, despite being aware of several Italian discovery procedures, Biogen has done nothing to even attempt discovery in Italy.  (Cuonzo Dec. ¶¶ 16–19.)  The principal limit on the availability of the Italian process is that it will not support a fishing expedition—a plaintiff cannot use discovery to search for parties to sue.  As in most courts, accusations of patent infringement in Italy require *some* evidence of patent infringement by *any* defendant.

If Biogen had any basis to sue any alleged infringer, Biogen could use Italian discovery.

Biogen has none, and so resorts to using § 1782 to inappropriately seek both evidence of infringement as the identity of possible defendants.  Instead, Biogen's assertion that it does not know which parties to sue or where to search is an admission that Biogen lacks any factual basis for asserting infringement in Italy by anyone, including Sandoz Int'l GmbH and Sandoz GmbH.

Courts in this District have previously questioned why a § 1782 petitioner would seek discovery in Delaware when they have not yet attempted relief through a foreign court.  *E.g., In re Syngenta Crop Prot. AG*, No. 21-mc-375-CFC, 2022 WL 3153858, at *2 (D. Del. Aug. 8, 2022) ("Syngenta's failure to seek the discovery from GPS in the foreign court and instead seek it here suggests that Syngenta is trying to circumvent presumedly less favorable foreign discovery procedures."); *In re Application of Gilead Pharmasset LLC*, 2015 WL 1903957, at *5 ("On balance, the court finds Gilead's lack of interest in pursuing any discovery under the laws of the Entitlement Proceeding forums indicates an attempt to circumvent those rules."); *Via Vadis Controlling GmbH v. Skype, Inc*., C.A. No. 12-mc-193-RGA, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013) ("Despite that permission, this Court declines, especially in the absence of any request from the foreign courts, to help Via Vadis overcome the rules and procedures of the foreign courts.").  And the courts have repeatedly concluded that failure to seek discovery in foreign courts while using the § 1782 mechanism in the U.S. is often designed to circumvent less favorable foreign discovery rules.  *Id*.

The same is true here.  Biogen has not attempted to bring an action in Italian courts or sought discovery there.  Italian discovery rules permit targeted discovery in patent infringement actions, but do not permit the type of unbounded and speculative discovery that Biogen seeks. (Galimberti Dec. ¶¶ 10-12.)  Biogen's attempt to circumvent the requirements for discovery in Italy is contrary to the purpose of § 1782.  *Syngenta*, 2022 WL 3153858, at *2.

The third *Intel* factor favors vacating the Order.

### 4.       Biogen's Requests are Overly Broad and Unduly Burdensome

The fourth *Intel* factor evaluates whether the Application contains "unduly intrusive or burdensome requests."  *Intel*, 542 U.S. at 265.  "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be a broad 'fishing expedition' for irrelevant information."  *In re Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1043 (N.D. Cal. 2016).

Biogen's requests are often directed to information that is confidential and potentially irrelevant to any purported infringement, including treatment using natalizumab.  But Biogen does not explain why the documents it seeks are relevant.  And although Biogen claims that the cause of action will arise when natalizumab is approved—meaning that infringement has not taken place—it requests information about test results from three years before the Application was filed.  Biogen requests that Sandoz produce all guidance materials used by any physician in any place on a series of subjects.  (D.I. 2 at Req. 7.)  The requests also bear on confidential information contained in the BLA (which is an improper use as detailed above) ▮▮▮▮▮▮▮▮ Finally, none of the requests actually refer to use of natalizumab—despite Biogen's claim that any infringement will be imminent upon the approval of the natalizumab biosimilar.

The fourth *Intel* factor favors vacating the Order.  As such, the statutory and discretionary factors all favor rejecting Biogen's Application, vacating the Order, and dismissing this action.

### D.       The "Twin Aims" of § 1782 Favor Vacatur of the Application

Neither Biogen's Application does further the "twin aims" of § 1782: providing efficient assistance to participants in international litigation and encouraging foreign courts to provide similar assistance to courts in the U.S.  *Intel*, 542 U.S. at 252.  In *Pinchuk v. Chemstar Products LLC*, a Delaware court denied a § 1782 discovery application based on the twin aims, despite

18

finding that all *Intel* factors favored discovery.  No. 13-MC-306-RGA, 2014 WL 2990416 at *4 (D. Del. June 26, 2014).  The court found that because the documents were located abroad, the foreign courts at issue had "not spoken regarding [the] discovery request," and it was unclear whether the documents at issue would "assist, or interfere with the foreign proceedings" (i.e., because the foreign claims had just been filed), the application should be denied.  *Id.* at 3–4.

Here, as in *Pinchuk*, the twin aims counsel vacating the Court's Order and quashing Biogen's subpoena.  Biogen seeks documents that are present in Europe, and fails to explain how these documents will assist with the foreign proceedings—in part because no proceedings have been instituted.  The Court's grant of the Application before any involvement of the Italian court does not provide efficient assistance, nor does it encourage Italian courts to provide similar help.

## II.     The Subpoena Should be Quashed Under Rules 26 and 45

Alternatively, the Subpoena should be quashed pursuant to Rules 26 and 45.  *See Glob. Energy Horizons*, 647 F. App'x at 86 (recognizing § 1782 incorporates these rules).  "A subpoena should be quashed or modified when it: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(3)(A).  For the reasons detailed *supra* in the statement of facts and in connection with the fourth *Intel* factor, the Subpoena is overbroad and unduly burdensome.  It is also duplicative of discovery Biogen will likely seek from defendants in the Italian Action, and it seeks irrelevant documents, data potentially subject to privacy restrictions (as covering all patient samples taken in Italy), and burdensome discovery contrary to Rule 26.  Accordingly, the Subpoena should be quashed.

III.    **At a Minimum, The Subpoena Should be Modified and a Protective Order Entered**

A.      **Reasonable Restrictions Should be Implemented**

Biogen's requests, as detailed, are overly broad and unduly burdensome: they concern confidential documents from other entities that Biogen can obtain from proper defendants in an Italian action, span a timeframe outside Biogen's claimed infringement window, and ask for information on actions taking place outside of Italy.  First, the Subpoena should not encompass any information before when the natalizumab biosimilar is approved.  No past action can be considered infringement because the natalizumab biosimilar has not been approved in Italy and all of Biogen's claims rest on treatment of patients.  (Galimberti Dec. ¶ 8.)  As such, Biogen's Request for "[d]ocuments sufficient to identify every laboratory or provider that has performed the Sandoz/Polpharma Assay in the past" three years is irrelevant to a hypothetical Italian action.

Biogen additionally seeks the testing locations of all samples taken from patients in Italy.  And the location of other Requests is unbounded—requesting all contracts with other entities.  This information is irrelevant to the hypothetical Italian Action, and Biogen offers no justification for such a sweeping Request, nor the relevance to the potential Italian action.  The Subpoena should be modified to limit all Requests to actions taking place in Italy or documents pertaining to alleged infringement in Italy, and within a time frame that Biogen can allege infringement (if any such time frame exists).  Finally, a protective order should be implemented.

## **CONCLUSION**

Sandoz respectfully requests the Court grant the relief sought by its Motion.

<table>
<tr><td>Of Counsel:</td><td>YOUNG CONAWAY STARGATT &<br>TAYLOR, LLP</td></tr>
<tr><td>Erik J. Olson<br>MORRISON & FOERSTER LLP<br>755 Page Mill Road</td><td><i>/s/ Anne Shea Gaza</i><br>Anne Shea Gaza (No. 4093)</td></tr>
</table>

Palo Alto, CA  94304
(650) 813-5600
EJOlson@mofo.com

Eric P. Berger
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105
(415) 268-7000
EBerger@mofo.com

Aaron G. Fountain
MORRISON & FOERSTER LLP
701 Brazos Street, Suite 1100
Austin, TX  78701
(737) 309-0700
AFountain@mofo.com

Dated:  July 20, 2023

Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302)571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Respondent Sandoz Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 21, 2023, a copy of the foregoing document was served on the counsel listed below in the manner indicated:

**BY EMAIL**

Tiffany Geyer Lydon
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
tlydon@ashbygeddes.com

Theodore J. Folkman
RUBIN & RUDMAN, LLP
53 State St.
Boston, MA 02109
tfolkman@rubinrudman.com


YOUNG CONAWAY STARGATT
& TAYLOR, LLP


*/s/ Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Respondent Sandoz Inc.*