**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE APPLICATION OF BIOGEN MA, INC. FOR ISSUANCE OF SUBPOENA UNDER 28 U.S.C. § 1782 | Civil Action No. 23-MC-260-GBW |

**MEMORANDUM ORDER**

Pending before the Court is Sandoz, Inc.'s ("Sandoz" or "Respondent") Motion to Vacate Order Regarding Biogen's Application And Dismiss This Action, to Quash the Subpoena or, in the Alternative, For a Protective Order to Modify the Subpoena ("Motion"). D.I. 13. Sandoz request this Court to vacate the Court's order granting Biogen MA's ("Biogen" or "Petitioner") *Ex Parte* Application for an Order Pursuant to 28 U.S.C. § 1782 ("Order") (D.I. 8) and quash Biogen's Subpoena to Produce Documents. Sandoz's Motion has been fully briefed (D.I. 18; D.I. 25; D.I. 28). For the reasons herein, the Court denies Sandoz's motion.

## I. BACKGROUND

Biogen is a global biotechnology company that has developed and commercialized a broad portfolio of medicines for the treatment of multiple sclerosis ("MS"). D.I. 3 at 1. Among those medications is Tysabri®, a biologic medicine for the treatment of certain forms of MS. *Id.* The active ingredient in Tysabri® is monoclonal antibody natalizumab. *Id.* Tysabri® was first developed in the late 1990s and, by approximately 2003, had become regarded as an effective treatment for MS, when treatment options remained limited. *Id.* In November 2004, the U.S. Drug

and Food Administration ("FDA") approved Tysabri® for treatment of certain forms of MS in the United States. *Id.* at 2.

In early 2005, two cases of progressive multifocal leukoencephalopathy ("PML"), a rare neurological disorder, were reported by MS patients who were prescribed Tysabri® during clinical trials. *Id.* PML, while extremely rare, is usually fatal. *Id.* PML is caused by John Cunningham Virus ("JCV"), a virus that commonly infects individuals during childhood and is generally harmless in individuals who are not immunocompromised. *Id.* Until 2005, PML was understood to occur primarily in patients with severely compromised immune systems and had not been reported in association with MS. *Id.* After the reports, Biogen suspended all trials and commercialization of Tysabri® to investigate the possible connection between Tysabri® and PML, and to develop methods to manage the risk of PML. *Id.*

After extensive research, Biogen identified that one risk factor for PML was the presence of anti-JCV antibodies. *Id.* As a result of Biogen's work on managing PML risk, the FDA re-approved Tysabri® in June 2006. *Id.* The European Medicines Agency also approved Tysabri® in June 2006. *Id.* Thereafter, Biogen undertook efforts to develop the STRATIFY JCV assay, an assay to determine a patient's JCV status. *Id.* at 3. The STRATIFY JCV assay detects the presence of anti-JCV antibodies in a patient's blood and measures the level of those antibodies. *Id.* Based on those results, the assay generates a numerical value known as the "JCV index value," which clinicians can use to assess a patient's risk of developing PML. *Id.* Clinicians may then use the JCV index value, together with other clinical considerations, to determine whether to prescribe Tysabri® or, for patients already receiving Tysabri®, whether to switch them to an alternative medication. *Id.* Tysabri® is used by patients around the world. *Id.* at 4. Now, clinicians routinely request the STRATIFY JCV assay when considering prescribing Tysabri®. *Id.*

Biogen owns multiple patents directed to methods of assessing the risk of PML, including methods that employ anti-JCV antibody assays such as the STRATIFY JCV assay. D.I. 3 at 3. European Patent No. EP 3 575 792 ("EP 792") and Application No. EP 4 187 248 ("App. EP 248") are among the patents and patent applications owned by Biogen that relate to such methods. *Id.* EP 792 contains nine claims and is directed to "methods of evaluating a patient's risk of PML, including through conducting a JCV assay and obtaining a JCV index value." *Id.* at 4-7. App. EP 248, a child patent of EP 792, is a divisional application pending in the European Patent Office. *Id.* at 6. The disclosure of App. EP 248 is similar to that of EP 792. *Id.* at 7. The claims of App. EP 248 relate to the use of the product natalizumab in circumstances where a patient's risk of developing PML is evaluated in accordance with the teaching of EP 792. *Id.* at 8. App. EP 248 is still being prosecuted, and the scope of the claims could change during prosecution. *Id.*

In September 2019, Sandoz and Polpharma, pharmaceutical companies based in Switzerland and Poland, respectively, announced their intention to commercialize a natalizumab biosimilar. *Id.* Under their arrangement, Polpharma was responsible for the development, manufacture, and supply of the natalizumab biosimilar, while Sandoz was responsible for its commercialization and distribution. *Id.* In July 2022, Polpharma filed an application with the European Medicines Agency for marketing authorization for its natalizumab biosimilar. *Id.* at 9. A press release issued by Sandoz and Polpharma announcing their marketing authorization application indicated that, subject to regulatory approval, their natalizumab biosimilar would come with a JCV test. *Id.*

Biogen has asserted infringement of its patents relating to its STRATIFY JCV assay against Sandoz and Polpharma in both the United States and the United Kingdom. *Id.* In the course of those proceedings, Biogen has obtained confidential information from Sandoz and Polpharma. *Id.*

However, that information may not be used in other proceedings. D.I. 3 at 9. Consequently, Biogen may lack the information necessary to satisfy the pleading requirements applicable in other jurisdictions, such as Italy. *Id.* Biogen intends to bring claims against Sandoz and Polpharma in Italy for infringement of the App. EP 248 and, potentially, EP 792. *Id.* at 11.[1] Under the laws of Italy, Biogen must supply evidence of infringement when it makes its initial filing to the Italian Court. *Id.* Biogen claims that it has substantial grounds for believing that Sandoz and Polpharma's natalizumab biosimilar intended for commercialization in Italy will infringe one or more claims in App. EP 248 and EP 792; however, it presently lacks sufficient factual information to satisfy the pleading requirements in Italy. *Id.*

On May 15, 2023, Biogen filed an *ex parte* application under 28 U.S.C. § 1782 in this Court, seeking authorization to serve a subpoena on Sandoz. D.I. 1. On May 23, 2023, the Court granted Biogen's application. D.I. 8. Biogen then served Sandoz with the subpoena. D.I. 18 at 2. On July 20, 2023, Sandoz filed the present Motion. D.I. 13.

## II. LEGAL STANDARD

Under Section 1782, district courts have discretion to grant applications for discovery to be used in a foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). A court presented with a Section 1782 application must, as a preliminary matter, "first decide[] whether [the three] statutory requirements [of Section 1782] are met." *In re Biomet Orthopaedics Swtz. GmBh*, 742 F. App'x 690, 694 (3d Cir. 2018). The statutory requirements condition Section 1782 discovery on a showing that (1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign

[1] Italy allows an IP owner to bring suit on a pending patent application, even before the patent is granted. *Id.*

or international tribunal; and (3) the application is made by an interested person. *Pinchuk v. Chemstar Prod. LLC*, No. 13-306, 2014 WL 2990416, at *1 (D. Del. June 25, 2014).

If the court finds that the application satisfies these statutory requirements, the court then considers certain discretionary factors outlined by the Supreme Court in the *Intel Corp.*, to determine whether to grant the application. *Biomet*, 742 F. App'x at 694. "A district court is not required to grant a § 1782 discovery application simply because it has the authority to do so." *Pinchuk*, 2014 WL 2990416, at *2.

Rather, in deciding whether the court should exercise its discretion to grant the Section 1782 application, the court must carefully weigh the following *Intel* factors: (1) whether the person from whom discovery is sought is a participant in a foreign proceeding; (2) the nature of the foreign tribunal and the character of the proceedings; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and (4) whether the discovery sough is unduly intrusive or burdensome. *See Intel*, 542 U.S. at 264-65. In considering each factor, the district court must remain mindful of the twin aims of Section 1782: (1) providing efficient assistance to participants in international litigation, and (2) encouraging foreign countries – by example – to provide similar assistance to our courts. *Via Vadis Controlling GmbH v. Skype, Inc.*, No. 12-193, 2013 WL 646236, at *1 (D. Del. Feb. 21, 2013).

## III. DISCUSSION

Sandoz asserts that the Court should vacate the Court's Order. D.I. 18 at 7. In support of its assertion, Sandoz contends that (1) Biogen's application fails to meet the two statutory requirements, (2) the *Intel* factors favor vacating the Order, and (3) the "twin aims" of § 1782 favor vacatur. Sandoz also claims that the subpoena should be quashed under Federal Rules of Civil Procedure 26 and 45. D.I. 18 at 19. In the alternative, Sandoz requests that the subpoena be modified and a protective order entered. D.I. 18 at 20.

After analyzing the *Intel* factors and exercising its discretion, the Court denies Sandoz's Motion to Vacate and Quash (D.I. 13).

**A. Biogen's Application Meets the Statutory Requirements of § 1782**

Sandoz claims that the Court should vacate the Order because Biogen's application fails to meet the statutory requirements of § 1782. D.I. 18 at 8. In particular, Sandoz asserts that (1) the application is not "for use" in any action within reasonable contemplation and (2) the documents are not possessed by an entity that "resides in" the United States. *Id.*

**1. The Application Is "For Use" in an Action Within Reasonable Contemplation**

Sandoz contends that Biogen's application does not meet the statutory requirements of §1782 because Biogen does not seek discovery "for use" in any action within reasonable contemplation. D.I. 18 at 8. Under §1782, for discovery to be "for use" in a foreign proceeding, the foreign proceeding must be "within reasonable contemplation." *Matter of Wei for Or. Seeking Discovery Under 28 U.S.C. § 1782*, No. 18-MC-117, 2018 WL 5268125, at *2 (D. Del. Oct. 23, 2018) (citing *In re Intel Corp. Microprocessor Antitrust Litig.*, No. 05-485, 2008 WL 4861544, at *11 (D. Del. Nov. 7, 2008). For a proceeding to be within "reasonable contemplation . . . an applicant must provide reliable indications of the likelihood that proceedings will be instituted within a reasonable time." *Id.* (internal quotation marks and citation omitted).

Sandoz's contention is not persuasive. Here, Biogen's application is "for use" in an action within reasonable contemplation. Although Biogen has not initiated the Italian proceedings yet, Biogen has provided "reasonable indications of the likelihood that proceedings will be instituted within a reasonable time." *Matter of Wei for Or. Seeking Discovery Under 28 U.S.C. § 1782*, 2018 WL 5268125, at *2 (citation omitted). In particular, Biogen has stated that it "seeks discovery via Section 1782 to obtain evidence relevant to infringement in Italy . . . so that it can properly plead

its case under Italian law." D.I. 25 at 2. Moreover, Biogen is already asserting patents against Sandoz and its affiliates in the United States and the United Kingdom. *Id.* at 1. Lastly, Biogen claims that it needs the discovery "to institute Italian proceedings" because Italian proceedings require "evidence (not just allegations) that infringing activities are occurring or may occur in Italy," a point that Sandoz does not dispute. D.I. 25 at 9.

The cases that Sandoz cites are distinguishable to the instant case. First, the court in *In re Sargeant* held that the "potential proceedings" were "not within reasonable contemplation" because the applicant sought to "use § 1782 to investigate whether litigation is possible before launching it." 278 F. Supp. 3d 814, 823 (S.D.N.Y. 2017) (internal quotation marks and citations omitted). On the other hand, Biogen contends that it is not using §1782 to decide whether litigation is probable. Rather, Biogen claims its application is "to obtain details about the who, what, and where of infringement." D.I. 25 at 2. Second, the petitioners in *BANOKA S.a.r.l. v. Alvarez & Marsal, Inc.* did "not state with any specificity the information they expect[ed the respondents] to have in their possession that would reflect" the petitioners' legal theory. No. 22-MC-00182, 2023 WL 1433681, at *6 (S.D.N.Y. Feb. 1, 2023), *order adopted in part, rejected in part,* No. 1:22-MC-182, 2024 WL 1242994 (S.D.N.Y. Mar. 22, 2024). Additionally, the petitioners' "broad demands reveal[ed] the discovery is sought more in the nature of a fishing expedition with the hope it will turn up sufficient factual information to support a colorable claim of fraud." *Id.* Here, on the other hand, "Biogen has identified the patent and patent application forming the basis for the contemplated Italian suit, as well as the cause of action." D.I. 25 at 9.

**2. Sandoz Resides in Delaware**

Sandoz next asserts that Biogen's application does not meet the § 1782 statutory requirements because Biogen is allegedly seeking discovery from "Sandoz Int'l GmbH, Sandoz GmbH, and/or potentially other foreign Sandoz entities" which do not reside in Delaware. D.I. 18

at 10-11. This assertion is without merit. Biogen's application petitions to serve Sandoz, which resides in Delaware. D.I. 1.

Sandoz's attempts to frame this request as targeting Sandoz entities outside Delaware are unpersuasive. Sandoz claims that "[c]ourts have looked at the actual target of the discovery request in determining whether the target is 'found' in the state," but the cases Sandoz cites are not applicable here. D.I. 18 at 11. In *In re Fuhr*, the court found that although the petitioner sought "evidence from Deutsche Bank AG," the petitioner was "actually seeking discovery from Deutsche Bank (Suisse), who was not located in the district. No. 13-6753, 2014 WL 11460502, at *2 (S.D.N.Y. Aug. 6, 2014). The court made the determination that petitioner actually sought evidence from Deutsche Bank AG because the evidence was "an account maintained by Deutsche Bank (Suisse). *Id.*

The holding from *In re Fuhr* is not applicable here because Biogen is not seeking evidence maintained by a foreign entity. Sandoz does not contend that it does not have the documents requested in the subpoena. Rather, Sandoz merely states that "it is not clear the extent to which the documents sought by Biogen . . . would be in the possession, custody, or control of Sandoz." D.I. 28 at 9-10. However, as Biogen convincingly explains, "documents that were created by one entity in a global enterprise can of course be in possession, custody, or control of other entities in that global enterprise or their agents." D.I. 25 at 8.[2]

---

[2] *Kestrel Coal Pty. Ltd. v. Joy Glob., Inc.*, 362 F.3d 401, 404 (7th Cir. 2004), which petitioner cites, is of limited relevance here. First, *Kestrel* was decided before *Intel*, so the court in *Kestrel* did not conduct the same analysis involving the *Intel* factors and the statutory requirements of § 1782 as post-*Intel* courts have. *See id.* at 404 (noting that the Supreme Court had granted cert. in *Intel*). Second, post-*Intel* courts have cited *Kestrel* for the proposition that a petitioner cannot hold that "two separate corporate entities should be treated as one for purposes of [a § 1782] petition" without evidence. *In re Fuhr*, 2014 WL 11460502, at *2. Again, Sandoz has not shown that Biogen is treating two separate corporate entities as one.

If it turns out that Sandoz does not have possession, custody, or control of the requested documents, then Biogen is not entitled to those documents. This same issue arose in *In re Request From Vienna*, No. 23-MC-258, 2023 WL 6278815 (D. Del. Sept. 26, 2023). In that case, Sandoz disputed the § 1782 statutory requirement of residing in Delaware because the documents were "possessed by Sandoz GmbH." *Id.* at *3. The court in *In re Request From Vienna* concluded that the statutory prong was satisfied because Sandoz resides in Delaware. However, the court also made clear to "Amgen that it is not entitled to obtain from Sandoz Inc. documents that are not within Sandoz Inc's possession, custody, and control." *Id.* The Court reaches the same conclusion here.[3] Accordingly, the statutory requirement that Sandoz "reside or is found" within this district is satisfied.

### B. The Application Satisfies the *Intel* Factors

#### 1. The First *Intel* Weighs Against Sandoz's Motion

The first *Intel* factor considers "whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid." *In re Mun*, No. 22-MC-243, 2023 WL 7074016, at *4 (D. Del. Oct. 26, 2023). Sandoz asserts that this factor weighs in its favor for two reasons. One, when "nearly all of the documents that the subpoena seeks are also in the possession of parties to the foreign proceeding, the first factor [is] squarely in favor of [the respondent]." D.I. 18 at 13 (quoting *In re OOO Promnefstroy*, No. 19-99, 2009 WL 3335608, at

[3] The court in *In re Request From Vienna* also held that if "Sandoz Inc. wholly own Sandoz GmbH . . . or otherwise has the legal right to obtain certain document from Sandoz GmbH . . . upon demand, then it has control over those documents for purposes of § 1782." 2023 WL 6278815, at *3. However, the Court had to come to that conclusion because "Amgen want[ed] to use the order sought by its application to obtain documents in Sandoz GmbH['s] possession that Sandoz Inc. does not exercise control over." *Id.* Because Biogen does not make that same argument here, this Court need not address this point.

*7 (S.D.N.Y. Oct. 15, 2009)). Second, Sandoz claims this factor is in its favor because "Biogen does not assert any difficulty in obtaining discovery in Italian proceedings." D.I. 18 at 14.

Sandoz's assertions are unavailing. When considering the first *Intel* factor, courts determine if the foreign court has the mechanisms in place for the discovery the petitioner requests. *See In re Req. From Vienna*, 2023 WL 6278815, at *5 (finding the first *Intel* factor in favor of the petitioner because "Austrian law does not provide a mechanism for pre-suit discovery before a patent infringement preliminary injunction or a main action for patent infringement" (internal quotation marks and citation omitted)); *Biomet*, 742 Fed. Appx. at 696 (vacating the district court's decision to quash the subpoena issued pursuant to § 1782 because the district court did not consider the fact that "[a] party to a German lawsuit cannot demand categories of documents from his opponent").

Sandoz's cited case is not relevant to the instant action. First, *In re OOO Promnefstroy* dealt with a § 1782 application where "the vast majority of the application covers documents within the reach of the Dutch courts." 2009 WL 3335608, at *5. Thus, the petitioner had a mechanism in a foreign court to obtain the documents the application sought "through the parties to the foreign proceeding." *Id.* at 7. That situation is not the same in this action because the methods for taking discovery in Italy are unavailable. D.I. 25 at 10-11.

Additionally, despite Sandoz's contention, Biogen has asserted several difficulties in obtaining discovery in Italian proceedings: "An *ex parte* search order of the infringer's premises under Articles 129-130 of the Italian IP Code is unavailable precisely because Biogen does not yet know which specific entities will be infringing[,] . . . [and a] request for disclosure under Article 121 of the IP Code and Article 210 of the Civil Procedure code is unavailable because no action is yet pending in Italy." D.I. 25 at 10-11. Although Sandoz contends that these procedures are

available to Biogen, Sandoz does not refute Biogen's contention that they are inapplicable in the circumstances presented here. D.I. 28 6-7. Thus, the first *Intel* factor weighs against Sandoz's Motion.

### 2. The Second *Intel* Factor Weighs Against Sandoz's Motion

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *In re Mun.*, 2023 WL 7074016, at *3. Sandoz claims this factor weighs in its favor because "Biogen offers little explanation of how it plans to use the discovery it seeks in an Italian action." D.I. 18 at 15. However, "[a]s the party opposing discovery, [Sandoz] bear[s] the burden of persuading the Court that the foreign tribunals would not consider the discovery sought under § 1782." *In re Ex Parte Application of Eni S.p.A. for an Ord. Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proc.*, No. 20-MC-334, 2021 WL 1063390, at *4 (D. Del. Mar. 19, 2021) (citing *In re Gilead Pharmasset LLC*, C.A. No. 14-MC-243, 2015 WL 1903957, at *3 (D. Del. Apr. 14, 2015)); *INVISTA N.A. S.a.r.l. v. M & G USA Corp.*, No. 11-1007, 2013 WL 1867345, at *4 (D. Del. Mar. 28, 2013), *report and recommendation adopted sub nom. Invista N.A. S.A.R.I. v. M7G USA Corp.*, No. 11-1007, 2013 WL 2456252 (D. Del. June 5, 2013) (finding the second *Intel* factor in favor of the petitioner because the respondent did "not directly argue that a foreign court would not consider the evidence at issue"). Thus, the second *Intel* factor weighs against Sandoz's Motion.

### 3. The Third *Intel* Factor Weighs Against Sandoz's Motion

The third *Intel* factor considers "whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States." *In re Mun.*, 2023 WL 7074016, at *3. Sandoz claims that this factor weighs in its favor because "a petitioner who eschews foreign discovery altogether and immediately files a § 1782 application

shows 'a lack of interest in pursuing any discovery' in the applicable jurisdictions, which 'indicates an attempt to circumvent those rules.'" D.I. 18 at 16 (quoting *In re Application of Gilead Pharmasset LLC*, C.A. No. 14-mc-243, 2015 WL 1903957, at *5 (D. Del. Apr. 14, 2015)). Sandoz further claims that Biogen showed a lack of interest in pursuing any discovery because there are avenues of discovery that Biogen has access to that it has not pursued. As one example Sandoz alleges, "an Italian court would grant [Biogen] access to the accused infringer's premises to search for evidence of infringement" if Biogen could "bring any reasonable allegation." D.I. 18 at 16 (emphasis omitted). However, as Biogen has maintained, it is unable to start an action when "there is no procedure under Italian law to help a plaintiff who does not have the information needed to know the identity of the party that will infringe." D.I. 25 at 13. Under the third *Intel* factor, the relevant inquiry is whether the application "*conceals* an attempt to circumvent foreign proof-gathering restrictions." *Intel*, 542 U.S. at 264. In this action, Biogen has established that no available procedure permits it to obtain the identity of the party that may be liable for infringement in Italy. *See In re Request From Vienna*, 2023 WL 6278815, at *5 (finding that the third *Intel* factor favored the party requesting discovery when it had "disclosed that it ha[d] no available mechanism to obtain pre-suit discovery in the foreign jursidictions"). Under these circumstances, Biogen's request cannot reasonably be viewed as "tainted by a surreptitious effort to bypass foreign discovery rules." *Kulzer v. Esschem, Inc.*, 390 F. App'x 88, 92 (3d Cir. 2010). Thus, the third *Intel* factor weighs against Sandoz's Motion.

### 4. The Fourth *Intel* Factor Weighs Against Sandoz's Motion

The fourth *Intel* factor addresses "whether the subpoena contains unduly intrusive or burdensome requests." *In re Mun.*, 2023 WL 7074016, at *3. The Third Circuit has held that "Section 1782 expressly incorporates the Federal Rules of Civil Procedure and the fourth factor aligns with Rules 26 and 45." *In re Global Energy Horizons Corp.*, 647 Fed. Appx. at 85-86.

Pursuant to Federal Rule of Civil Procedure 26, the burden of discovery should be proportional to the needs of a case. Fed. R. Civ. P. 26(d)(1). "It is of course true that responding to a subpoena is inevitably a burden, and often an onerous one." *AbbVie Inc. v. Boehringer Ingelheim Int'l GmbH*, No. 17-1065, 2018 WL 2337133, at *3 (D. Del. May 23, 2018). Sandoz claims that this factor weighs in its favor because Biogen's requests are "potentially irrelevant to any purported infringement, including treatment using natalizumab." D.I. 18 at 18. Sandoz contends that Biogen fails to explain why the requested documents are relevant. *Id.* Sandoz further contends that none of Biogen's request expressly concerns the use of natalizumab, notwithstanding Biogen's contention that infringement will be imminent upon approval of natalizumab biosimilar. *Id. d*

"A specific showing of burden is commonly required by district judges faced with objections to the scope of discovery." *Biomet*, 742 F. App'x at 699 (internal quotation marks and citation omitted). Sandoz does not assert that complying with any of Biogen's request would impose an undue burden in locating or producing the requested documents. Rather, Sandoz's objections are directed principally to relevance. Biogen, in turn, explains the specific reasons why each category of requested documents is relevant and proportional to the needs of the case. *See* D.I. 25 at 14-16 (explaining how each request relates to the infringement suit concerning natalizumab and the use of the assay). The Court finds those explanations sufficient. Moreover, any concerns Sandoz may have regarding the disclosure of confidential information does not warrant vacating Biogen's application. Biogen has agreed to the entry of an appropriate protective order to safeguard the confidential information sought by the subpoena. *See id.* at 17. Accordingly, "any concerns about confidentiality can be addressed by the appropriate protective order." *In re Ex Parte Apple Inc.*, No. 12-80013, 2012 WL 1570043, at *3 n.9 (N.D. Cal. May 2, 2012). Thus, the final *Intel* factor weighs against Sandoz's Motion.

### C. Biogen's Application Is Consistent With The Twin Aims of § 1782

Sandoz asserts that twin aims of § 1782 favor vacating Biogen's Application. D.I. 18 at 18. The twin aims of Section 1782 are (1) providing efficient assistance to participants in international litigation, and (2) encouraging foreign countries – by example – to provide similar assistance to our courts. *Via Vadis Controlling GmbH*, 2013 WL 646236, at *1. Sandoz compares this case to *Pinchuk*, in which the court denied a § 1782 application on the basis of the statute's twin aims, even though it concluded that each of the *Intel* factors weighed in favor of discovery. *Pinchuk*, 2014 WL 2990416, at *4. In *Pinchuk*, the court reasoned that, because the requested documents were located abroad and the relevant foreign courts had not yet expressed a view concerning the requested discovery, it was uncertain whether discovery would facilitate or interfere with the foreign proceedings. *Id.* Sandoz contends that the same considerations are applicable in this case. According to Sandoz, the documents Biogen seeks are located in Europe, and Biogen has not demonstrated how production of the documents would assist with the Italian proceedings. D.I. 18 at 18-19. Sandoz further contends that granting the application before the Italian court has had any involvement would neither constitute efficient assistance to that court nor encourage Italian courts to provide similar assistance to U.S. courts. *Id.*

The Court is not persuaded by Sandoz's contentions. Biogen has demonstrated that the requested discovery would assist in identifying the party that may be liable for infringement in Italy, thereby providing meaningful assistance in the international litigation. Sandoz's assertion that the requested documents are presently located in Europe does not alter that conclusion, particularly where courts have not reached a consensus on whether the location of the requested documents abroad, standing alone, weighs against granting a § 1782 application. *See Pinchuk*, 2014 WL 2990416, at *3 (collecting cases). The Court therefore finds that granting Biogen's application is consistent with the twin aims underlying § 1782.

### D. The Court Denies Sandoz's Motion to Quash

In the alternative, Sandoz requests that the subpoena be quashed pursuant to Federal Rules of Civil Procedure 26 and 45. D.I. 18 at 19. Sandoz maintains that the subpoena is overbroad for the reasons set forth in its Motion. *Id.* Sandoz also contends that the subpoena is duplicative of discovery that is likely to be sought in the Italian action and encompasses documents irrelevant to the claims. *Id.* For the reasons set forth above, the Court declines to quash the subpoena under Federal Rules of Civil Procedure 26 and 45. The requested discovery is relevant to Biogen's claims, and Sandoz has not shown that the subpoena is overbroad, unduly duplicative, or seeks irrelevant information. Moreover, Biogen states that it is not interested in receiving confidential information related to patients' personal information. D.I. 25 at 17. As previously discussed, any concerns Sandoz may have regarding the disclosure of confidential information can be addressed through the protective order which Biogen has agreed. Thus, the Court denies Sandoz's request to quash the subpoena.

## IV. CONCLUSION

For all the foregoing reasons, the Court denies Sandoz's Motion to Vacate and Quash.

* * * * *

WHEREFORE, at Wilmington this 26th day of August 2026, **IT IS HEREBY ORDERED** that Sandoz, Inc.'s Motion to Vacate Order Regarding Biogen's Application And Dismiss This Action, to Quash the Subpoena or, in the Alternative, For a Protective Order to Modify the Subpoena (D.I. 13) is **DENIED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE